IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL ENGINEERING,<br><br>         Plaintiff,<br><br>   v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>         Defendants. | No. C 08-04022 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS** |

Defendants have filed a motion to dismiss and motion for judgment on the pleadings. These matters are currently set for oral argument on March 12, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court hereby GRANTS defendants' motions.

**BACKGROUND**

This litigation arises from the deterioration of a longstanding business relationship between plaintiff Mitchell Engineering and defendant City and County of San Francisco ("the City"). Plaintiff is a contractor which performed work on municipal construction projects for the City. Between 2000 and 2004, plaintiff was awarded contracts for a series of upgrades to the City's freshwater system and for a project involving the seismic retrofitting and rehabilitation of the Fourth Street Bridge. Second Amended Complaint ("SAC") ¶¶ 16-17. During the course of these projects, plaintiff made statements to the media and to the San Francisco Board of Supervisors expressing dissatisfaction with the City's

handling of the projects. *Id.* ¶¶ 18-21. Plaintiff claims that, thereafter, the City commenced a campaign of retaliation against it. According to plaintiff, the City and the individual defendants "implemented a policy intended to interfere with [plaintiff's] work on other unrelated public and private projects, and the existing and prospective contractual and business relationships with [plaintiff's] banks, contractors, subcontractors, suppliers, vendors, sureties, and other governmental entities, all with the intent and objective of driving [plaintiff] out of the City of San Francisco and out of business." *Id.* ¶ 25. The retaliatory actions complained of include changing the City's bidding policy to ensure that plaintiff would not qualify to bid on construction projects, changing previously agreed-upon methods of performance of construction contracts, intentionally delaying payment, and interfering with payment due on plaintiff's projects for other municipalities. *Id.* ¶¶ 31-35. Plaintiff claims that the City's actions have undermined its relationships with other business partners and caused it financial damage. *Id.* ¶ 37.

The present action is one of seven lawsuits brought by plaintiff against the City. The other six actions, each of which alleges that the City breached its contractual obligations on a particular project, were brought in state court between July 2007 and February 2008. Plaintiff filed the present action in this Court on August 22, 2008, alleging civil rights violations under 42 U.S.C. § 1983 and tort claims for intentional interference with contractual relations, intentional and negligent interference with prospective economic advantage, and civil conspiracy. In addition to the City, plaintiff named Anthony Irons, Michael Quan, and Alan Wong (the "individual defendants") in their official capacities as employees of the San Francisco Public Utilities Commission. The operative complaint at this time is the SAC, filed on March 9, 2009. The City and individual defendants Quan and Wong previously answered the SAC, and now bring a motion for judgment on the pleadings. Defendant Irons brings a motion to dismiss. Both motions seek dismissal of only the state law causes of action. As both motions are made on identical grounds, the Court will address them together.

**LEGAL STANDARD**

**1.   Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss,

2

the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**2.      Motion for Judgment on the Pleadings**

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are "functionally identical," and the same inquiry is applied in ruling on both. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

**DISCUSSION**

Defendants move to dismiss each of plaintiff's four state law causes of action: intentional interference with contractual relations, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and civil conspiracy.

Defendants' first contention is that plaintiff's claims must be dismissed because plaintiff failed to timely submit the claims to the City in accordance with the California Tort Claims Act. Under the Tort Claims Act, "no suit for 'money or damages' may be brought against a public entity until a written claim therefor has been presented to the public entity and either has been acted upon or is deemed to have been rejected." *Alliance Fin. v. City & County of San Francisco*, 75 Cal. Rptr. 2d 341, 344 (Cal. Ct. App. 1998) (citing Cal. Gov't Code §§ 905, 945.4). A tort claim must be submitted to the public

3

1  entity within six months of the date of its accrual. Cal. Gov't Code § 911.2(a). It is undisputed that
2  plaintiff submitted his claim to the City on August 15, 2008. Therefore, to be timely, plaintiff's claims
3  must have accrued no earlier than February 15, 2008.

4  California's "delayed discovery rule" postpones accrual of a claim until the plaintiff discovers,
5  or has reason to discover, the facts forming the basis for the elements of the claim. *Norgart v. Upjohn*
6  *Co.*, 981 P.2d 79, 88 (Cal. 1999). "Rather than examining whether the plaintiffs suspect facts supporting
7  each specific legal element of a particular cause of action, [courts should] look to whether the plaintiffs
8  have reason to at least suspect that a type of wrongdoing has injured them." *Fox v. Ethicon Endo-*
9  *Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005). Separate causes of action arising from a single injury do
10 not necessarily accrue together; the court must assess whether the claims result from different types of
11 unlawful conduct. *Id.* at 924 ("[I]f a plaintiff's reasonable and diligent investigation discloses only one
12 kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort,
13 the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.").

14 Defendants assert that plaintiff's six state court lawsuits between July 2007 and February 2008
15 demonstrate that it was aware of the basis for the present claims well before the six-month limitations
16 period covered by his August 15, 2008 claim submission. Plaintiff counters that its claims are timely
17 because it discovered their factual basis – namely, defendants' tortious intent – only when it took the
18 depositions of several City employees in June 2008 in connection with the state court suits. Plaintiff
19 urges a distinction between the contract claims asserted in its state court actions and the tort claims
20 asserted in the present action, stating that although it previously "believed the City breached previous
21 contracts and improperly denied bids," it "did not become aware of Defendants' intentional plan and
22 systematic course of conduct to drive Mitchell out of San Francisco and out of business – which sounds
23 in tort – until the June 2008 depositions." Oppo. at 21.

24 In the Court's view, the filings submitted in connection with plaintiff's state court actions
25 demonstrate that plaintiff was aware of at least some allegedly tortious conduct as early as 2007, when
26 five of its six state court suits were filed. From the face of plaintiff's own filings, the contractual claims
27 asserted in the state court lawsuits were based at least in part on defendants' alleged attempts to
28 financially harm plaintiff, to obtain leverage against plaintiff, and to interfere with and undermine

4

plaintiff's ability to do its work on other projects, the same basic allegations now advanced in support of the tort claims. *See, e.g.*, "Central" Complaint, Def. Ex. A, ¶82y ("CCSF made improper and wrongful demands on Plaintiff's surety"), ¶ 89 ("CCSF's breaches . . . were intentional, and intended by CCSF to cause serious and severe economic harm to Plaintiff"); "Dewey" Complaint, Def. Ex. B, ¶ 22 ("The City did not pay plaintiff to obtain leverage against plaintiff to take less money tha[n] it was due to cause harm to Mitchell."); Oct. 19, 2007 Letter from Curt Mitchell, Def. Ex. D-D ("[T]he City is trying to use its unlimited resources to harm Mitchell Engineering, as a City employee previously threatened the City would do."); "Lincoln" Cross-Complaint, Def. Ex. F, ¶ 13 (alleging that City breached covenant of good faith and fair dealing by "misinforming persons as to Mitchell and the state of the project; misrepresenting the state of the project; [and] misrepresenting when and how much it was paying Mitchell"). In the Court's view, plaintiff's interactions with defendants, as laid out in its own pleadings, should have given plaintiff "reason to at least suspect that a type of wrongdoing" – namely, tortious interference – had injured it. *See Fox*, 110 P.3d at 920.

The fact that the state court lawsuits sound in contract while the present suit sounds in tort does not save plaintiff's claims. Plaintiff relies heavily on *Fox*, in which the California Supreme Court first ruled definitively that all claims arising from an injury do not necessarily accrue simultaneously if the claims stem from "distinct types of wrongdoing." *Id.* at 925. In *Fox*, a plaintiff who had brought a medical malpractice action against her surgeon sought to amend her complaint later in the proceedings in order to state a product liability claim against the manufacturer of a faulty stapler used during her surgery. The California Supreme Court ruled that the new claim was timely because the plaintiff adequately alleged that she had no reason to suspect the stapler had caused her injury until the surgeon mentioned a stapler malfunction at his deposition on the malpractice claim. *Id.* at 922-25. Here, by contrast, plaintiff's own submissions in connection with its state court lawsuits reveal its awareness of facts that should at least have caused plaintiff to suspect there was a basis for a tortious interference claim. As defendants correctly point out, the June 2008 depositions did not restart the clock on plaintiff's claims by setting forth previously missing information essential to plaintiff's claim, but simply provided further evidence in support of a theory plaintiff should have suspected, and seemingly did suspect, as early as July 2007.

Accordingly, defendants' motion to dismiss plaintiff's Second, Third, Fourth and Fifth Causes of Action on statute of limitations grounds is GRANTED. Because plaintiff's knowledge of the basis for its tort claims is apparent on the face of the documents submitted in connection with plaintiffs' state court lawsuits, no amendment could cure the defect. Therefore, the dismissal is with prejudice.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss and motion for judgment on the pleadings with prejudice. (Docket No. 68).

**IT IS SO ORDERED.**

Dated: March 9, 2010

SUSAN ILLSTON
United States District Judge

6