IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL ENGINEERING, | No. C 08-04022 SI |
| Plaintiff, | **ORDER RE: PLAINTIFF'S MOTIONS FOR ATTORNEY'S FEES** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Defendant. | |

On April 1, 2011, the Court heard argument on plaintiff's two motions for attorney's fees. Having considered the arguments of counsel and the papers submitted, the Court hereby rules as follows.

**BACKGROUND**

This litigation arose from a business dispute between plaintiff Mitchell Engineering; the City and County of San Francisco ("the City"), including the City's Department of Power and Water ("DPW") and Public Utilities Commission ("PUC"); Anthony Irons, the Deputy General Manager of the PUC; Michael Quon, Director of the PUC's Construction Management Bureau; and Alan Wong, the PUC's Safety Manager. Plaintiff is a public works contractor who previously entered into many municipal construction contracts with the City for projects such as upgrading the City's utility pipelines, drinking water reservoirs, and bridges.

On September 30, 2010, a jury found the City and County of San Francisco ("City") liable on a Section 1983 procedural due process claim that plaintiff brought under a constructive debarment theory and awarded plaintiff $3.605 million. *See* Jury Verdict (Doc. 347). Over two years before,

plaintiff had filed a five-count complaint against four defendants, requesting over $20 million in relief. *See* Compl. (Doc. 1); First Am. Compl. (Doc. 10). In addition to bringing a Section 1983 claim for procedural due process, substantive due process, equal protection, and First Amendment violations, plaintiff brought four state law tort claims: intentional interference with contractual relations, intentional and negligent interference with prospective economic advantage, and civil conspiracy. First Am. Compl. (Doc. 10).

In February 2009, the Court dismissed the state law tort claims as to three of the defendants, with leave to amend. *See* Order (Doc. 30). Plaintiff filed a second amended complaint in March 2009, realleging all of the same claims against the same defendants and requesting the same relief. In March 2010, the Court dismissed the state law claims as to all four defendants, because plaintiff failed timely to submit the claims to the City in accordance with the California Tort Claims Act. *See* Order (Doc. 89). As the Court noted then and on other occasions, plaintiff brought six other lawsuits against the City between July 2007 and February 2008, all in state court, alleging in each that the City had breached its contractual obligations on a particular project. *See, e.g., id.*

In May 2010, plaintiff voluntarily dismissed the case as to defendants Quan and Wong. Notice (Doc. 125). In July 2010, the Court denied plaintiff's motion for summary judgment, and granted in part defendants' motion for summary judgment, dismissing plaintiff's procedural due process claim. Order (Doc. 176). The Court also ruled that plaintiff could not seek to impose liability or damages for any acts prior to August 22, 2006. *Id.*

Plaintiff proceeded to trial against Irons and the City on its First Amendment claim and its procedural due process claim. Before closing arguments, the Court granted defendant Irons qualified immunity as to the procedural due process claim. Order (Doc. 336). The jury then found defendants not liable for a First Amendment violation, but found the City liable for violating plaintiff's right to procedural due process. Jury Verdict (Doc. 347). Although plaintiff's expert, Terry Lloyd, had estimated that plaintiff suffered $34.3 million in damages, the jury awarded plaintiff $3.605 million, the figure provided by defendants' expert, Wes Nutten. On February 14, 2011, the Court denied the City's renewed motion for judgment as a matter of law. Order (Doc. 414). Plaintiff filed a bill of costs on February 11. Bill of Costs (Doc. 404).

## LEGAL STANDARD

Section 1983 of Title 42 of the United States Code allows a district court to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in "any action or proceeding to enforce a provision of section[] . . . 1983." The term "prevailing party" refers "to a party that obtains a judicially sanctioned 'material alteration of the legal relationship of the parties.'" *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 451 (9th Cir. 2010) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001))

A district court begins its calculation of fees by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 436, 433 (1983). The resulting number is frequently called the "lodestar" amount. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested. *Id.* at 433.

In addition, a district court must answer two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* at 434. Regarding the first question, the Ninth Circuit has explained that

> [a] plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful § 1983 claim. Such unrelated claims must be treated as if they had been raised in a separate lawsuit to realize congressional intent to limit awards to prevailing parties. However, in a lawsuit where the plaintiff presents different claims for relief that involve a common core of facts or are based on related legal theories, the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis. Instead, the court must proceed to the second part of the analysis and focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (internal quotation marks and citations omitted).

"[W]hen the plaintiff has prevailed on some, but not all his claims . . . '[t]he district court must reduce the attorneys fee award so that it is commensurate with the extent of the plaintiff's success.'"

3

*Id.* at 1104 (quoting *McGinnis v. Ky. Fried Chicken*, 51 F.3d 805, 808, 810 (9th Cir. 1994)). Although "a pro rata distribution of fees to claims 'makes no practical sense,'" a district court should nonetheless "'give primary consideration to the amount of damages awarded as compared to the amount sought.'" *McCown*, 565 F.3d at 1104 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *see also id.* at 1103 n.3 ("The Court in *Hensley* also noted, in dicta, that 'had respondents prevailed on only one of their six general claims, [rather than five of the six,] . . . a fee award based on the claimed hours clearly would have been excessive.'" (quoting 461 U.S. at 436) (alteration and omission in *McCown*)).

**DISCUSSION**

Two sets of attorneys have filed motions for attorney's fees based on the judgment entered in plaintiff's favor. The first motion is filed by Oliver L. Holmes, Richard L. Seabolt, and Damon M. Fisk of the law firm Duane Morris LLP ("original counsel"), who represented plaintiff until December 2008. *See* Notice of Substitution of Counsel (Doc. 8). Original counsel seek $276,895 in attorney's fees. Pl. Motion (Doc. 398).[1] The second motion is filed by Robert R. Moore and Michael J. Betz of the law firm Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"), and by Matt Gonzalez and G. Whitney Leigh of the law firm Gonzalez & Leigh LLP ("Gonzales & Leigh") (collectively "later counsel"). It seeks attorney's fees on behalf of McInerny & Dillon, the law firm that represented plaintiff from December 2008 until July 2009. *Id.*; Notice of Substitution of Counsel (Doc. 42 ). It also seeks fees on behalf of Gonzalez & Leigh, which was officially substituted as counsel in this case in July 2009. Notice of Substitution of Counsel (Doc. 42). And it seeks fees on behalf of Allen Matkins, a firm with which Gonzalez & Leigh associated in October 2009. Notice of Association of Counsel (Doc. 46). Later counsel seek $4,807,519.50 in attorney's fees, plus $394,908.37 in non-taxable costs. Memorandum (Doc. 409).[2]

The City agrees that plaintiff is a prevailing party in this case, and that plaintiff is entitled to

---

[1] Original counsel seek an additional $4,760 for time they spent on their reply brief and time they anticipate spending on the hearing on their motion.

[2] Later counsel have conceded to a number of requested reductions in their attorney's fees and costs calculations. Those concessions are not reflected in these figures. *See also* note 6, below.

4

attorney's fees and costs pursuant to Section 1988. The City disagrees with plaintiff's calculation of "a reasonable attorney's fee," however. Additionally, the City has challenge later counsel's inclusion of the costs of expert witness fees in its attorney's fees motion. In a separate filing, the City has objected to plaintiff's taxation of the costs for daily trial transcripts in its bill of costs; in response, plaintiff requests that the daily trial transcript costs be awarded as part of later counsel's attorney's fees motion instead.

## I.  Calculating the lodestar

The first task for the Court is to calculate the lodestar by multiplying the number of hours reasonably spent on this litigation by a reasonable hourly rate.

Both of plaintiff's motions are accompanied by declarations explaining how counsel arrived at the hourly rates they request for each individual who worked on the case. *See* Holmes Decl. (Doc. 400); Leslie Decl. (Doc. 408). The City does not contest these hourly rates. *See* Oppo. Memorandum (Doc. 415 at 7 n.1). The Court finds them to be reasonable.

The parties do disagree about the number of hours that were reasonably spent. The City requests an elimination of certain hours from the lodestar calculation, which it argues are not properly included.

### A.  Time spent on the attorney's fees motions

The City's first objection is to the amount billed for the attorney's fees motions themselves—$105,291.30 for 242.2 hours of work—which the City calls excessive. Original counsel attest to working 84.4 hours on their motion, for which they request $43,789.50 in attorney's fees. Later counsel attest to working 157.875 hours on their motion, for which they request $61,490.75. The City objects to these figures for a variety of reasons: (1) original counsel's request for $46,378.50 for time spent preparing the attorney's fees motion is excessive, considering their small overall attorney's fees request; (2) "much of the time" devoted to obtaining attorney's fees was actually spent obtaining extensions of time to file the motions; and (3) the local rules allow only two weeks to file attorney's fees motions, or 80 hours of full time work by a single individual, which demonstrates that 242.2 hours of work is excessive. The City requests that the Court award only $34,780 total, which is the lodestar for

5

80 hours worth of work, billed at the average rate for the 242.2 hours ($434.73 per hour).

Later counsel respond that they already subtracted certain hours, including those associated with several declarations; that they did not request fees for any work performed after January 31, including work on the reply brief; that only 4.2 hours were spent requesting extensions of time; that they purposefully had lower-paid attorneys do most of the work on the motion; and that it takes a lot of time to compile and review billing and cost records and redact them properly and transparently. Original counsel respond that their request is not excessive, and they request an additional $4,760 for time spent preparing their reply and time anticipated to be spent on the hearing.

The Court agrees with later counsel that it was reasonable to spend 157.875 hours on this motion, as later counsel represented plaintiff for two years, through discovery, a motion for summary judgment, trial, and post-trial motions. However, the Court does not find that it was reasonable for original counsel to spend approximately half that long on their motion when original counsel only represented plaintiff for about six months, all before any complaint was served. Original counsel spent less than one tenth the hours spent by later counsel to this case. The Court therefore reduces original counsel's Lodestar by $21,894.75, for 42.2 hours of work, which is a conservative estimate of the number of excessive hours original counsel spent preparing the motion. The Court finds that this will compensate original counsel for both their motion and their reply brief and declines to award the additional requested $4,760.

### B. Time spent summarizing defendant Irons's deposition testimony

Later counsel agrees to subtract $4,036.50 for 20.7 hours spent summarizing part of defendant Irons's deposition testimony after Irons had already testified at trial.

### C. Time spent on pendent state law claims

The City objects to $45,837 billed for 110.2 hours spent by original and later counsel wholly on the pendent state law claims, which were all dismissed with prejudice on statute of limitations grounds. Original and later counsel reply that they may recover for time spent on the state law claims, because they were sufficiently related both factually and legally to their successful claim.

Plaintiff achieved success on a due process claim that challenged the City's motivation for terminating plaintiff from its work on the Central Pump project in January 2007. Plaintiff's First Amendment claim was based on a common core of facts, and the Ninth Circuit has counseled against attempting to divide plaintiff's request between the successful due process claim and the unsuccessful First Amendment claim. *See McCown*, 565 F.3d at 1103 (explaining that the Court should instead "proceed to the second part of the analysis and focus on the significance of the overall relief obtained by the plaintiff" (internal quotation marks omitted)). In contrast, the pendent state law claims challenged alleged breaches of contractual obligations in relation to six contracts. The state law legal theories were unlike the successful procedural due process claim, and the claims were dismissed with prejudice. The Court does find it appropriate to subtract $12,240 from original counsel's lodestar, for the 26.5 hours that original counsel spent wholly on the pendent state law claims, and to subtract $33,597 from later counsel's lodestar, for the 83.7 hours that later counsel spent.

### D. Time spent negotiating contingency fee arrangements

Next, the City objects to $33,036 charged for 54.2 hours spent by original and later counsel negotiating contingency fee arrangements with plaintiff. Later counsel agree to excise their portion of these charges.

Original counsel argues that the isolated entries do not relate only to the drafting and preparation of the contingency fee agreement, although they do not explain further. Upon independent review, the Court finds that some of 12 hours of challenged work that Holmes billed on October 29, 30, and 31, and some of the 2.7 hours of challenged work that Fisk billed on September 23, were devoted to non-contingency fee agreement work on this case. The Court finds it appropriate to include four of Holmes's hours of work in the lodestar calculation and one of Fisk's hours. Original counsel also argue that they have already accounted for inappropriate entries, and in support cite a portion of a declaration that says that they reduced their hours "to account for any inefficiencies in staffing this matter." *See* Holmes Decl. ¶ 20 (Doc. 400). The City does not object to inefficiencies, but rather to the inclusion of the hours at all.

The Court agrees almost entirely with the City and finds it appropriate to subtract $23,816 from

7

1 original counsel's Lodestar, for 39.2 hours spent making contingency fee arrangements, and to subtract
2 $5,500 from later counsel's Lodestar, for 10 hours of such work.

### E. Time spent working with potential appellate counsel

The City also objects to $11,953 charged for 28.2 hours spent by later counsel working with potential appellate counsel. Later counsel concedes that the 28.2 hours were spent addressing post verdict issues relating to possible appellate issues, but argues that they are nonetheless recoverable. If later counsel is ever legally entitled to recover these fees, it will be after plaintiff is successful on appeal. At that point, they may file a request for appellate attorney's fees before the Ninth Circuit. *See* 9th Circuit Rule 39-1.6. The Court finds it appropriate to subtract all $11,953 charged by later counsel for 28.2 hours spent with potential appellate counsel.

### F. Time spent working on other cases

Finally, the City challenges $97,265.75 for 205.7 hours that it argues relate to other litigation, not to this case. The City argues that the time entries relate to work on pending state cases; work on indemnity issues and negotiations with Arch, which recently filed a lawsuit against plaintiff regarding the issues; and original counsel's attendance at and discussion of the trial. Later counsel agree to all of the requested subtractions, except for 1.4 hours of time that they state was spent in "an attempt to reach a global settlement, which would have involved both Arch and the City." With the exception of a challenge to what appears just to be a typographical error in the City's papers, original counsel do not appear to challenge any of these proposed reductions.[3]

The Court agrees with the City that time spent working on other cases should not be included in the lodestar. The Court agrees with later counsel that 1.4 global settlement hours should be included; and in addition, the Court was not able to locate .9 hours and $459 worth of work by later counsel that

---

[3] Original counsel object that the City has included "erroneous citations to time entries." They isolate only one entry, for 2.9 hours of work on "1/2/2008" and point out that they did not represent plaintiff until summer 2008. It is clear that "1/2/2008" is a typo, and that the City intended to reference a billing entry for 2.9 hours of work on "10/2/2008." *Compare* Doc. 415 at 30 (Opposition Appendix) *with* Doc. 400-1 at 20 (Exhibit B to Motion).

8

is challenged by the City.[4] Thus, the Court finds it appropriate to subtract $31,876 from original counsel's lodestar for the 58.2 hours of work identified in the City's motion, and the Court finds it appropriate to subtract $64,123.75 from later counsel's lodestar for 145.175 of the work identified by the City.[5]

### G. Lodestar summary

Original counsel request a lodestar of $276,895 for 512.6 hours of work. Based on the above reductions, the Court calculates original counsel's Lodestar at $187,068.25. Later counsel state in their moving papers that they request a Lodestar of $3,205,013 for 7,869.75 hours of work, although they have presented accounting records for $3,218,308.00.[6] The Court relies on the accounting records and thus the figure of $3,218,308.00 to calculate later counsel's lodestar. Based on the above reductions, the Court calculates later counsel's lodestar at $3,099,097.75.

---

[4] *See* Appx. to Oppo. at 25 (Doc. 415) (referencing .9 hours and $459 worth of work by Raymond Buddie on Oct. 1, 2008 that it characterizes as "Transfer of cases in state," and citing Doc. 410-1:2); Moore Decl. Ex. A at 1–2 (Doc. 410-1)(listing .9 hours and $319.50 worth of work by Rick Grady on Oct. 1, 2008 that they characterize in part as "re: transfer of matters," and listing .9 hours and $459 worth of work by Raymond Buddie on Nov. 20, 2008 that was already subtracted from the lodestar calculation as time spent on a contingency fee agreement).

[5] The City challenges what it says is $720 worth of work for 1.2 hours that Robert Moore spent on October 22, 2010 "Responding to 'false allegations.'" *See* Appx. to Oppo. at 25 (Doc. 415). This appears to coincide with an entry for $756 worth of work for 1.2 hours that Robert Moore spent on that date. *See* Moore Decl. Ex. A at 211 (Doc. 410-3). The Court has subtracted the full $756 billed for that time. Similarly, the City challenges what it says is $1,500 worth of work for 2.5 hours that Robert Moore spent on October 22, 2010 "Responding to 'false allegations.'" *See* Appx. to Oppo. at 25 (Doc. 415). This appears to coincide with an entry for $1,575 worth of work for 2.5 hours that Robert Moore spent on October 25, 2010. *See* Moore Decl. Ex. A at 211 (Doc. 410-3). The Court has subtracted the full $1,575 billed for that time. Another apparent typographical error—listing work done by Raymond Buddie on Oct. 15, 2010 as work done on Oct. 14, 2010—does not have any impact on the Court's math. *See* Appx. to Oppo. at 25 (Doc. 415).

[6] The discrepancy between the moving papers and the accounting records relates to Gonzalez & Leigh. Gonzalez & Leigh provide three different figures. First, they state that their lodestar is $428,990. Mot. at 10 (Doc. 409); *see also* Leigh Decl. at ¶ 13 (Doc. 411). Second, they provide accounting records that would result in a lodestar of $442,285.00 (after accounting for the entries marked as non-1983 work). *See* Leigh Decl. Ex. A (Doc. 411). And third, they supply a breakdown of fees charged by the different practitioners, which, added together, only total $408,576.25. *See* Leigh Decl. at ¶ 10 (Doc. 411).
    When calculating the lodestar, the Court will use as a starting point the actual billing sheets, which for Gonzalez & Leigh mean a requested lodestar of $442,285.00.

9

## II. Adjusting the lodestar

Later counsel argues that it achieved an exceptional result under novel circumstances, and therefore that it is entitled to 1.5 times the lodestar calculation. The City argues that plaintiff achieved only limited success, and therefore that *both* lodestars should be reduced by 60%.

### A. Upward adjustment

The Court agrees with later counsel that the circumstances of the case are somewhat novel, as plaintiff prevailed on its procedural due process claim using the uncommon theory of constructive debarment. The Court disagrees that this is the type of "rare and exceptional" case that would entitle a civil rights plaintiff to a multiplier of the lodestar calculation. *See Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010) (internal quotation marks omitted); *see also id.* ("[T]he novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel." (internal quotation marks and alteration marks omitted)).

### B. Downward adjustment

The Court agrees with the City that both lodestar figures should be reduced somewhat. Overall, plaintiff did not "achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *See Hensley*, 461 U.S. at 434. Plaintiff alleged four state law claims in addition to its federal claim, against four different defendants.[7] Throughout this litigation, plaintiff sought at least $20 million in damages, and even at one point as much as $80 million. At points in this case, plaintiff appeared to have a litigation goal of obtaining relief for *all* contract issues it had with the City. For example, the dismissed state law claims related to six contracts and not merely the procedure and motivation for the Central Pump termination. Plaintiff succeeded against only one defendant on only one theory of its federal claim, and it was awarded only $3.605 million. The relief actually

---

[7] To the extent that the state law claims are unrelated to and separable from the procedural due process claim, the Court has reduced the number of hours for which counsel are entitled to attorney's fees. To the extent that the state law claims are not separable, the Court considers them in this section.

10

obtained in this case was significantly less than what plaintiff sought originally, whether one looks to the ratio of successful to unsuccessful claims, the number of defendants actually held liable, or the actual damages awarded by the jury.

After the summary judgment order, however, the scope of the case was narrowed considerably, and plaintiff achieved a level of success after that point that made the hours reasonably expended after that point a satisfactory basis for making a fee award. At trial, plaintiff's constitutional rights were vindicated. The jury found the City liable for a due process violation and awarded plaintiff a substantial amount of money in damages. The presence of the First Amendment claim and defendant Irons at trial did not appreciably increase the complexity of the case or the number of hours devoted to preparing for trial. Plaintiff's First Amendment claim and due process claim essentially were based on identical facts. Plaintiff's case against defendant Irons and its case against the City were essentially identical, as the City's liability was premised on the actions of defendant Irons. Moreover, the due process claim against defendant Irons was dismissed not because plaintiff did not prove its case, but rather on qualified immunity grounds, because of the novelty and complexity of plaintiff's ultimately successful constructive debarment theory.

It is true that issues related to contracts other than Central Pump came up at trial. However, plaintiff is not the only party that should bear responsibility for that. The City introduced evidence and testimony at trial about the other contracts as part of its defense—the City attempted to provide an alternate and constitutional explanation for why plaintiff was terminated from the Central Pump project. Plaintiff is responsible for filing a bloated complaint and overlitigating portions of this case; but to the extent that the case remained overly broad after the summary judgment stage, defendant shares responsibility.

Considering plaintiff's somewhat limited success through the summary judgment stage on the one hand, and plaintiff's ultimate success at trial on a somewhat novel constitutional claim on the other hand, the Court finds it appropriate to do the following: (1) reduce original counsel's entire lodestar figure by one half, and award original counsel $93,534.13; (2) reduce later counsel's lodestar by one half for all hours worked before the summary judgment motion was decided on July 19, 2010; and (3) award later counsel the complete lodestar figure for hours worked after the summary judgment motion

11

1 was decided. Of the $3,099,097.75 worth of work performed by later counsel, $1,605,001.75 of work 2 was performed before July 19, 2010. One half of that total is $802,500.88. The remaining $1,494,096 3 of work was performed on or after July 19, and later counsel are entitled to that entire amount. Thus, 4 the total adjusted Lodestar for later counsel is $2,296,596.88. That breaks down by firm to: Allen 5 Matkins, $2,020,398.75; Gonzalez & Leigh, $243,859.38; and McInerney & Dillon, $32,338.75. The 6 total of approximately $2.4 million is commensurate with the extent of the plaintiff's success.

### III. Non-taxable costs

Plaintiff notes that it is entitled to non-taxable costs as part of an award of attorney's fees. Later counsel initially requested $394,908.37 in non-taxable costs. The City points out, and later counsel concede, that plaintiff may not recover expert fees pursuant to Section 1988. *See West Virginia Univ. Hosp. v. Casey*, 499 U.S. 83 (1991). Thus, the request should be reduced by $327,262.30.

Additionally, in its objections to plaintiff's bill of costs, the City argued that costs for daily trial transcripts are not recoverable as an element of taxable costs pursuant to Local Rule 54-3(b)(3). Civ. L.R. 54-3(b)(3) (explaining that the costs of reporter's transcripts not obtained for two enumerated purposes "is not normally allowable unless, before it is incurred, it is approved by a Judge or stipulated to be recoverable by counsel"). Later counsel agree, but they argue in their reply brief that they should be permitted to recover the $13,685.46 as part of attorney's fees award instead.

The Court agrees with later counsel that the costs of the transcripts is recoverable in this case. *See Sussel v. Wynne*, Civil No. 05-00444 ACK-KSC, 2007 WL 902369 (D. Hawaii March 21, 2007). The fact that later counsel is prevented by local rules from taxing the costs should not prevent later counsel from recovering them under Section 1988. *Cf. Nemo v. City of Portland*, No. CV-94-1553-ST, 1996 WL 437633 (D. Or. April 09, 1996) (awarding transcript fees as taxable costs because they "are more properly recoverable as costs under 28 USC § 1920," but explaining that "a prevailing plaintiff may [also] recover litigation expenses under 42 USC § 1988").

The Court finds it appropriate to award later counsel $81,331.53 in non-taxable costs as part of the attorney's fees award.

12

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS original counsel's motion for attorney's fees, but awards $93,534.13 rather than the requested amount. (Doc. 398.) The Court also GRANTS later counsel's motion for attorney's fees and costs, but awards $2,296,596.88 in attorney's fees, and awards $81,331.53 in non-taxable costs as part of the attorney's fees award, rather than the requested amounts. (Doc. 405.)

**IT IS SO ORDERED.**

Dated: April 14, 2011

SUSAN ILLSTON
United States District Judge